UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

ASHLEY WILSON, an individual,

      Plaintiff,

vs.

LIFE EXTENSION FOUNDATION BUYERS CLUB, INC.,
a Nevada Corporation,

      Defendant.

_____/

## COMPLAINT

1.      Plaintiff, ASHLEY WILSON (referred to as "Plaintiff" and "WILSON"), was an employee of Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., a Florida Corporation, and brings this action for disability/handicap discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553 (the "ADAAA"), and the Florida Civil Rights Act, F.S. §760.01 *et seq.*

2.      WILSON is an individual residing in Broward County, Florida, within the jurisdiction of this Court.

3.      Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC. (referred to as "Defendant" and "LIFE EXTENSION"), has at all times material to this Complaint owned a business that specializes in selling and distributing anti-aging and other health supplements, with Defendant's corporate headquarters located at 3600 West Commercial Boulevard, Fort Lauderdale, Florida 33309 in Broward County, Florida, within the jurisdiction of this Court.

4.      Jurisdiction is conferred on this Court by 28 U.S.C. §1331, §1332, §1337 and §1367, and 42 U.S.C. §12101 *et seq*.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because all of the events, or a substantial part of the events, giving rise to this action, occurred in Broward County, Florida, within the jurisdiction of the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

6.      In February 2024, LIFE EXTENSION hired WILSON as an Accounts Receivable Specialist in Defendant's Fort Lauderdale office based upon the regular rate of $26.00 per hour plus benefits, with Plaintiff's primary duties consisting of: data entry; write offs; receiving checks; mailing invoices; and accounting tasks for Defendant.

7.      At all times material to this action, WILSON was a covered employee of Defendant, LIFE EXTENSION, within the meaning of the ADAAA, 42 U.S.C. §12111(4), and the FCRA, F.S. §760.10(1)(a).

8.      At all times material to this action, Defendant, LIFE EXTENSION, had Fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the calendar year(s) 2025, 2024, and/or 2023.

9.      At all times material to this action, Defendant, LIFE EXTENSION, was WILSON's employer within the meaning of the ADAAA, 42 U.S.C. §12111(5), and the FCRA, F.S. §760.02(7).

10.      At all times material to this action, including but not limited to between February 2024 and October 2024, WILSON was an individual with one or more neurological conditions, namely Plaintiff suffering from Autism Spectrum Disorder, a/k/a ASD and Autism, and/or Neurodivergence, one or more neurodevelopmental disorders related to brain development that,

*inter alia*, affect how WILSON: (a) views, communicates, and interacts with other people as well as perceives the intentions of other individuals; (b) learns, thinks, and understands words, phrases, subject matter—including even simple questions or directions; (c) has sensitivity to light, sound, and temperature conditions; and (d) cognitive processes information and focuses, particularly in WILSON's work environment for which Plaintiff needs predictability and structure to reduce anxiety and enhance concentration and focus.

11.     At all times material to this action, including but not limited to between approximately February 2024 and October 2024, WILSON suffered from one or more "physical impairments" within the meaning of the ADA, 29 C.F.R. §1630.2(h)(1), as a result of WILSON's Autism-Neurodivergent disorder(s) and neurological conditions, including but not limited to, Plaintiff suffering from one or more physiological disorders or conditions affecting one or more of WILSON's major bodily functions, including but not limited to Plaintiff's neurological and related  functions and her ability to communicate.

12.     At all times material to this action, including but not limited to between approximately February 2024 and October 2024, WILSON was substantially limited in one or more "major life activities" within the meaning of the ADA and FCRA, including but not necessarily limited to the operation of a major bodily function including WILSON's neurological and related functions due to Plaintiff's Autism Neurodivergent disorder(s).

13.     Similarly, at all times material to this action, including but not limited to between approximately February 2024 and October 2024, WILSON was substantially limited in one or more "major life activities" within the meaning of the ADA and FCRA, including but not necessarily limited to: speaking, learning, reading, concentrating, thinking, communicating, and interacting with others.

14.     At all times material to this action, including but not limited to between approximately February 2024 and October 2024, WILSON was an individual with a "disability" or "handicap" as defined by the ADA and FCRA because Plaintiff (a) suffered physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by LIFE EXTENSION as a person with such impairments.

15.     During the course of WILSON's employment with LIFE EXTENSION between February 2024 and October 2024, Plaintiff communicated with numerous employees of Defendant, including but not necessarily limited to WILSON's immediate supervisors, Valeria Vera, Defendant's Accounting Manager, and Agnes Grimonpont, Defendant's Controller, about WILSON's Autism disorder and the lack of training and structure the company provided to Plaintiff as well as the nature of how WILSON's Autism disorder was impacted by these issues and Plaintiff's work environment at LIFE EXTENSION.

16.     Moreover, between approximately February 2024 and October 2024, WILSON was subjected to harassment, disparate treatment, and discrimination by LIFE EXTENSION because of Plaintiff's disability, Autism-Neurodivergent disorder(s), including but not limited to, *inter alia*: (a) Vera frequently belittling and making fun of WILSON; (b) Vera questioning Plaintiff's capability to complete tasks WILSON was carrying out successfully for Defendant; (c) Defendant applying policies and/or practices differently to WILSON, such as training, leaving the office, response time to e-mails, having to show management work performed at home, and other business issues for which LIFE EXTENSION subjected WILSON to disparate treatment because of Plaintiff's disability; and (d) terminating WILSON's employment in October 2024 because of a discriminatory animus against Plaintiff based upon her disability.

17. On May 20, 2024, WILSON, expressly disclosed to Theresa Moss, LIFE EXTENSION's Director of Human Resources, WILSON's Autism-Neurodivergent disorder(s), including the impact of Plaintiff's disability on WILSON's work for LIFE EXTENSION.

18. On May 21, 2024, Theresa Moss held a meeting with WILSON during which, *inter alia*, Plaintiff requested reasonable accommodations from LIFE EXTENSION for Plaintiff's disability, Autism, including: (a) WILSON asking management to help provide focused communications and structure for Plaintiff to carry out her essential duties as an Accounts Receivable Specialist for LIFE EXTENSION, including during team meetings relating to, *inter alia*, Standard Operating Procedures (SOP); and (b) LIFE EXTENSION (i) understanding the manner in which WILSON communicated with co-workers and management at LIFE EXTENSION as a result of Plaintiff's Autism-Neurodivergent disorder(s); and (ii) modifying/adjusting the way Defendant evaluated the performance of WILSON's duties and Plaintiff's workplace conduct as a result of WILSON's disability—instead of penalizing or admonishing WILSON for the nature of Plaintiff's straightforward communication tendencies, Plaintiff's difficulty with social interactions and understanding social cues, and how Plaintiff understands and processes information.

19. Subsequently on May 21, 2024, WILSON also notified her immediate supervisors, Valeria Vera and Agnes Grimonpont, about Plaintiff's disability, Autism-Neurodivergent disorder(s), because of the effects of Plaintiff's disability on WILSON's work for LIFE EXTENSION and ongoing communication problems in the workplace between Plaintiff and, other employees, and Defendant's management.

20. On May 23, 2024, WILSON made an internal disability discrimination complaint to LIFE EXTENSION about ongoing discrimination against Plaintiff because of her disability,

Autism-Neurodivergent disorder(s), but after WILSON communicated with Agnes Grimonpoint, Plaintiff was called into Valeria Vera's office and told, *inter alia*, that WILSON was a newer employee who had to "win over" the team—whereas in comparison to Plaintiff, other employees had longer tenures and/or the team consisted of other employees who were either "shy" or "busy Moms," that WILSON purportedly had to be sympathetic with—as part of which Defendant's management made excuses for the unlawful, disability-based disparate treatment WILSON reported.

21.     On or around June 26, 2024, WILSON made a second internal disability discrimination complaint to LIFE EXTENSION because of Plaintiff's disability, Autism-Neurodivergent disorder(s), specifically to Theresa Moss in Human Resources—after Agnes Grimonpont told WILSON that Plaintiff should quit her job at LIFE EXTENSION if WILSON did not feel welcome at the company—and Moss told Plaintiff that Grimonpont somehow meant well.

22.     On or around September 16, 2024, WILSON made a third internal disability discrimination complaint to LIFE EXTENSION because of Plaintiff's disability, Autism-Neurodivergent disorder(s), again to Theresa Moss in Human Resources, at which time WILSON reported that Plaintiff was being teased, harassed, and subjected to hostility because of her disability.

23.     Additionally in September 2024, WILSON was told by Marie Roberson that Agnes Grimonpont "did not appreciate" WILSON having called out of work for one (1) day because of Plaintiff's disability, Autism-Neurodivergent disorder(s), when there had been a monthly luncheon scheduled on that particular day because Grimonpont believed the luncheons were more important.

24.     In early October 2024, WILSON made a fourth internal disability discrimination complaint to LIFE EXTENSION because of Plaintiff's disability, Autism-Neurodivergent disorder(s), to Agnes Grimonpont, and WILSON reported that Plaintiff was being overstepped on her work tasks, characterized in a negative light, and treated in both a demeaning manner and differently than other employees for a purported communication, e-mail policy for response time, all because of Plaintiff's disability.

25.     However, despite WILSON's repeated internal disability discrimination complaints to LIFE EXTENSION in May 2024, June 2024, September 2024, and early October 2024, Defendant failed to take remedial action to address WILSON's discrimination complaints.

26.     Instead, in response to WILSON's final internal disability discrimination complaint to LIFE EXTENSION in early October 2024, Valeria Vera and Agnes Grimonpont notified WILSON that Plaintiff had purportedly violated a 24-hour e-mail response policy—despite no such policy ever having been provided to Plaintiff or even existing to either Plaintiff's knowledge or her co-workers.

27.     On October 7, 2024, Theresa Moss and Agnes Grimonpont informed WILSON that LIFE EXTENSION was terminating Plaintiff's employment because the company "decided to go a different route."

28.     Throughout WILSON's employment with LIFE EXTENSION between February 2024 and October 2024, WILSON satisfactorily performed her essential duties as an Accounts Receivable Specialist for Defendant.

29.     At all times material to this action, including but not limited to between February 2024 and October 2024, WILSON was qualified to and capable of performing the essential duties or her job as an Accounts Receivable Specialist for LIFE EXTENSION.

30.     LIFE EXTENSION's termination of WILSON's employment in October 2024 was based upon WILSON's actual or perceived disability/handicap, and/or was because of WILSON's exercise of her rights to request an accommodation from Defendant, all in violation of the ADA and FCRA.

31.     The reasons proffered and relied upon by LIFE EXTENSION for terminating WILSON's employment in October 2024 were false and known to be false by Defendant and instead were a pretext for unlawful disparate treatment and disability/handicap discrimination and retaliation against WILSON in violation of the ADA and FCRA.

32.     Based upon information and belief, between February 2024 and October 2024, LIFE EXTENSION treated employees without a disability more favorably than WILSON because of discrimination against Plaintiff based upon WILSON's disability/handicap, including but not necessarily limited to: (1) Khadijah Richards – Accounts Receivable; (2) Necole Sharp – Accounts Receivable; (3) Marie Roberson – Accounts Receivable; (4) Maria Merchant – Accounts Payable; and (5) Monica Harris – Accounts Payable.

**EXHAUSTION OF ADMINISTRATVIE REMEDIES**

33.     On November 12, 2024, WILSON dual filed a Charge of Discrimination against LIFE EXTENSION with the United States Equal Employment Opportunity Commission (EEOC) and Florida Commission for Human Relations (FCHR) Charge No. 510-2025-01499 alleging that she had been subjected to disability/handicap discrimination and retaliation in violation of the Americans with Disabilities Act and the Florida Civil Rights Act.  A copy of WILSON's Charge of Discrimination is attached hereto as Exhibit A.

34.     On May 12, 2025, the EEOC issued a Dismissal and Notice of Suit Rights to WILSON in connection with Charge No. 510-2025-01499, a copy of which Notice is attached hereto as Exhibit B.

35.     As of July 8, 2025, more than One Hundred and Eighty (180) days have passed since the filing of WILSON's Charge of Discrimination on November 12, 2024 and the FCHR did not issue any determination concerning WILSON's Charge.   As a result, pursuant to F.S. §760.11(18), which provides that in the event that the FCHR fails to conciliate or determine whether there is reasonable cause on any complaint under that section within 180 days of the filing of the complaint, an aggrieved person may file a civil action "as if the commission determined that there was reasonable cause," WILSON has exhausted all administrative remedies under Florida as well as Federal law.

36.     WILSON's Complaint is being filed with the Court on July 8, 2025 within approximately Fifty-Seven (57) days of WILSON's receipt of the EEOC's Dismissal and Notice of Suit Rights for Charge No. 510-2025-01499.

37.     All conditions precedent to the institution of this action have either occurred or been waived.

### COUNT I
### DENIAL OF ACCOMMODATION FOR A DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiff, ASHLEY WILSON, reasserts and reaffirms the allegations of Paragraphs 1 through 37 as if fully set forth herein and further states that this is an action against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for failure to provide an accommodation for a disability in violation of the Americans with Disabilities Act of 1990, 42

U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, §
2, 122 Stat. 3553. ("ADAAA").

38.     The Americans with Disabilities, the ADA and ADAAA, 42 U.S.C. §12112(a),
prohibits discrimination "against a qualified individual on the basis of disability in regard to job
application procedures, the hiring, advancement, or discharge of employees, employee
compensation, job training, and other terms, conditions, and privileges of employment.

39.     At all times material to this action, including but not necessarily limited to between
approximately February 2024 and October 2024, WILSON suffered from one or more neurological
conditions, namely Autism-Neurodivergent disorder(s).

40.     At all times material to this action, including but not limited to between
approximately February 2024 and October 2024, WILSON suffered from one or more "physical
impairments" within the meaning of the ADA, 29 C.F.R. §1630.2(h)(1), as a result of WILSON's
Autism-Neurodivergent disorder(s) and neurological conditions, including but not limited to,
Plaintiff suffering from one or more physiological disorders or conditions affecting one or more
of WILSON's major bodily functions, including but not limited to Plaintiff's neurological and
related  functions and her ability to communicate.

41.     At all times material to this action, including but not necessarily limited to between
approximately February 2024 and October 2024, WILSON was substantially limited in one or
more "major life activities" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(i)(ii),
including but not necessarily limited to the operation of a major bodily function including
WILSON's neurological and related functions as a result of Plaintiff's Autism-Neurodivergent
disorder(s).

42.     Similarly, at all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was substantially limited in one or more "major life activities" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(i) as a result of Plaintiff's Autism-Neurodivergent disorder(s) and related neurological conditions, including but not necessarily limited to: speaking, learning, reading, concentrating, thinking, communicating, and interacting with others.

43.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. §12102(1), Autism-Neurodivergent disorder(s), because Plaintiff (a) suffered physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by LIFE EXTENSION as a person with such impairments.

44.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON had to endure substantial limitations as a result of Plaintiff's Autism-Neurodivergent disorder(s) and neurological and related medical conditions within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(j), because WILSON's medical conditions substantially limited Plaintiff's ability to perform one or more major life activities—including but not necessarily limited WILSON's neurological functions and ability to communicate—as compared to most people in the general population.

45.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(A), because WILSON's Autism-Neurodivergent

disorder(s), neurological conditions, and related medical conditions constitute one or more actual physical impairments that substantially limited one or more of WILSON's major life activities.

46.     In addition, at all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was also "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(C), because WILSON was regarded by LIFE EXTENSION as having one or more physical impairments that substantially limited one or more of her major life activities as a result of WILSON's Autism-Neurodivergent disorder(s), neurological conditions, and related medical conditions.

47.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of her job as an Accounts Receivable Specialist for LIFE EXTENSION between approximately February 2024 and October 2024 with or without reasonable accommodation by Defendant even in the face of Plaintiff's disability, Autism-Neurodivergent disorder(s).

48.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was a "qualified individual with a disability" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(m) and 42 U.S.C. §12111(8), because WILSON possessed the requisite skill and experience to carry out her essential duties as an Accounts Receivable Specialist for LIFE EXTENSION between approximately February 2024 and October 2024, and WILSON likewise was capable of performing the essential functions of her job between even between approximately February 2024 and October 2024 despite

WILSON's disability, Autism-Neurodivergent disorder(s), with or without reasonable accommodation(s) by LIFE EXTENSION.

49.     Further, WILSON was also qualified for her job with LIFE EXTENSION between approximately February 2024 and October 2024 within the meaning of the ADA and ADAAA, 42 U.S.C. §12111(8) & (9), even in the face of the impact of WILSON's Autism-Neurodivergent disorder(s) and related medical conditions because LIFE EXTENSION could have and should have provided WILSON with reasonable accommodations for Plaintiff's disability.

50.     On May 21, 2024, WILSON requested reasonable accommodations within the meaning of the ADA and ADAAA, 42 U.S.C. §12111(9) and 29 C.F.R. §1630.2(o)(1), from LIFE EXTENSION for Plaintiff's disability, Autism-Neurodivergent disorder(s).

51.     However, between approximately late May 2024 and early October 2024, LIFE EXTENSION failed to provide WILSON with a reasonable accommodation for Plaintiff's disability, Autism-Neurodivergent disorder(s), in violation of 42 U.S.C. §12112.

52.     LIFE EXTENSION knowingly and willfully refused to provide WILSON with a reasonable accommodation between approximately late May 2024 and early October 2024 for Plaintiff's disability, Autism-Neurodivergent disorder(s), conduct prohibited by the ADA and ADAAA.

53.     LIFE EXTENSION's accommodation failure-violations of the ADA and ADAAA were intentional and were done with malice or reckless indifference to WILSON's rights guaranteed under the laws of the United States.

54.     WILSON has suffered lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of LIFE EXTENSION's accommodation failure-violations of the ADA and ADAAA.

55.     WILSON has retained the undersigned counsel to represent her in this action and pursuant to 42 U.S.C. §12205, WILSON is entitled to recover her reasonable attorneys' fees and costs from LIFE EXTENSION.

WHEREFORE, Plaintiff, ASHLEY WILSON, demands judgment against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

Plaintiff, ASHLEY WILSON, reasserts and reaffirms the allegations of Paragraphs 1 through 37 as if fully set forth herein and further states that this is an action against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for disparate treatment and disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553. ("ADAAA").

56.     The Americans with Disabilities, the ADA and ADAAA, 42 U.S.C. §12112(a), prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

57.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON suffered from one or more neurological conditions, namely Autism-Neurodivergent disorder(s).

58.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON suffered from one or more  "physical impairments" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(h)(1), as a result of one or more neurological disorders and related medical conditions, namely Autism-Neurodivergent disorder(s), that affect Plaintiff's neurological functions and ability to communicate.

59.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was substantially limited in one or more "major life activities" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(i)(ii), including but not necessarily limited to the operation of a major bodily function including WILSON's Autism-Neurodivergent disorder(s) and neurological functions.

60.     Similarly, at all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was substantially limited in one or more "major life activities" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(i) as a result of Plaintiff's Autism-Neurodivergent disorder(s) and related neurological conditions, including but not necessarily limited to: speaking, learning, reading, concentrating, thinking, communicating, and interacting with others.

61.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. §12102(1), Autism-Neurodivergent disorder(s),

because Plaintiff (a) suffered physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by LIFE EXTENSION as a person with such impairments.

62.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON had to endure substantial limitations as a result of Plaintiff's Autism-Neurodivergent disorder(s) and neurological and related medical conditions within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(j), because WILSON's medical conditions substantially limited Plaintiff's ability to perform one or more major life activities—including but not necessarily limited WILSON's neurological functions and ability to communicate—as compared to most people in the general population.

63.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(A), because WILSON's Autism-Neurodivergent disorder(s), neurological conditions, and related medical conditions constitute one or more actual physical impairments that substantially limited one or more of WILSON's major life activities.

64.     In addition, at all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was also "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(C), because WILSON was regarded by LIFE EXTENSION as having one or more physical impairments that substantially limited one or more of her major life activities as a result of WILSON's Autism-Neurodivergent disorder(s), neurological conditions, and related medical conditions.

65.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was a "qualified individual" as that

term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of her job as an Accounts Receivable Specialist for LIFE EXTENSION between approximately February 2024 and October 2024 with or without reasonable accommodation by Defendant even in the face of Plaintiff's disability, Autism-Neurodivergent disorder(s).

66.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was a "qualified individual with a disability" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(m) and 42 U.S.C. §12111(8), because WILSON possessed the requisite skill and experience to carry out her essential duties as an Accounts Receivable Specialist for LIFE EXTENSION between approximately February 2024 and October 2024, and WILSON likewise was capable of performing the essential functions of her job between even between approximately February 2024 and October 2024 despite WILSON's disability, Autism-Neurodivergent disorder(s), with or without reasonable accommodation(s) by LIFE EXTENSION.

67.     Further, WILSON was also qualified for her job with LIFE EXTENSION between approximately February 2024 and October 2024 within the meaning of the ADA and ADAAA, 42 U.S.C. §12111(8) & (9), even in the face of the impact of WILSON's Autism-Neurodivergent disorder(s) and related medical conditions because LIFE EXTENSION could have and should have provided WILSON with reasonable accommodations for Plaintiff's disability.

68.     Between approximately February 2024 and October 2024, WILSON was subjected to harassment, disparate treatment, and discrimination by LIFE EXTENSION because of Plaintiff's disability, Autism-Neurodivergent disorder(s), including but not limited to, *inter alia*: (a) Valeria Vera frequently belittling and making fun of WILSON; (b) Vera questioning Plaintiff's

capability to complete tasks WILSON was carrying out successfully for Defendant; (c) Defendant applying policies and/or practices differently to WILSON, such as training, leaving the office, response time to e-mails, having to show management work performed at home, and other business issues for which LIFE EXTENSION subjected WILSON to disparate treatment because of Plaintiff's disability; and (d) terminating WILSON's employment in October 2024 because of a discriminatory animus against Plaintiff based upon her disability, all in violation of 42 U.S.C. §12112(a).

69.     On October 7, 2024, LIFE EXTENSION terminated Plaintiff's employment because of her actual and/or perceived disability, Autism-Neurodivergent disorder(s), in violation of 42 U.S.C. §12112, which termination was based upon false and/or pretextual grounds because of Plaintiff's actual or perceived disability, in violation of 42 U.S.C. §12112(a).

70.     The reasons proffered and/or relied upon by LIFE EXTENSION in October 2024 for terminating WILSON's employment were false and a pretext for discrimination against WILSON because of her actual or perceived disability, Autism-Neurodivergent disorder(s), in violation of 42 U.S.C. §12112(a).

71.     LIFE EXTENSION knowingly and willfully engaged in conduct prohibited by the ADA and ADAAA against WILSON because of her disability so as to discourage, dissuade and/or otherwise dishearten WILSON.

72.     WILSON's actual and/or perceived disability was a motivating factor in LIFE EXTENSION's decision to terminate WILSON's employment in October 2024, in violation of 42 U.S.C. §12112.

73.     LIFE EXTENSION's violations of the ADA and ADAAA were intentional and were done with malice or reckless indifference to WILSON's rights guaranteed under the laws of the United States.

74.     WILSON has suffered lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of LIFE EXTENSION's violations of the ADA and ADAAA.

74.     WILSON has retained the undersigned counsel to represent her in this action and pursuant to 42 U.S.C. §12205, WILSON is entitled to recover her reasonable attorneys' fees and costs from LIFE EXTENSION.

WHEREFORE, Plaintiff, ASHLEY WILSON, demands judgment against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## COUNT III
## RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiff, ASHLEY WILSON, reasserts and reaffirms the allegations of Paragraphs 1 through 37 as if fully set forth herein and further states that this is an action against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for Retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §12203, as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553.

75.     The Americans with Disabilities, ADA and ADAAA, 42 U.S.C. §12203(a), provides that: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a

charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this chapter."

76.     Similarly, the ADA and ADAAA also provide, 42 U.S.C. §12203(b), that it shall "be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or an account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

77.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. § 12102(1), because Plaintiff (a) suffered one or more physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by LIFE EXTENSION as a person with such impairments as a result of WILSON's Autism-Neurodivergent disorder(s) and related neurological conditions.

78.     At all times material to this action, including but not necessarily limited to between approximately February 2024 and October 2024, WILSON was a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of her job as an Accounts Receivable Specialist for LIFE EXTENSION between approximately February 2024 and October 2024 with or without reasonable accommodation for Plaintiff's disability, Autism-Neurodivergent disorder(s).

79.     WILSON engaged in statutorily protected activity under the ADA and ADAAA on multiple occasions between approximately February 2024 and October 2024 by, *inter alia*, WILSON exercising or attempting to exercise or enjoy her rights under the ADA and ADAAA,

including but not limited to: (a) WILSON requesting reasonable accommodations in May 2025 from LIFE EXTENSION for Plaintiff's disability, Autism-Neurodivergent disorder(s); and (b) WILSON submitting internal discrimination complaints to Defendant in May 2024, June 2024, September 2024, and October 2024 about discrimination because of Plaintiff's disability, Autism-Neurodivergent disorder(s).

80.     On at least four (4) separate occasions during WILSON's employment with LIFE EXTENSION, Plaintiff objected to, opposed, and complained to Defendant about what Plaintiff reasonably and in good faith believed was discrimination and disparate treatment against WILSON because of her disability, Autism-Neurodivergent disorder(s).

81.     More specifically, when WILSON objected to, opposed, and complained to LIFE EXTENSION on at least four (4) separate occasions—including in May 2024, June 2024, September 2024, and October 2024—about what Plaintiff reasonably and in good faith believed was unlawful discrimination and disparate treatment against her because of her disability, Autism-Neurodivergent disorder(s), WILSON engaged in protected activity within the meaning of the ADA and ADAAA, 42 U.S.C. §12203(a).

82.     In retaliation for WILSON's good faith opposition to and internal disability discrimination complaints up through early October 2024 to LIFE EXTENSION about disparate treatment and discrimination against Plaintiff because of WILSON's disability, Autism-Neurodivergent disorder(s), LIFE EXTENSION terminated WILSON's employment on October 7, 2024 for one or more reasons that were false and a pretext for unlawful retaliation against Plaintiff in violation of the ADA and ADAAA, 42 U.S.C. §12203(a).

83. LIFE EXTENSION terminated WILSON's employment in early October 2024 based upon discriminatory and/or pretextual grounds because WILSON engaged in statutorily protected activity under the ADA and ADAAA, in violation of 42 U.S.C. §12203(a).

84. LIFE EXTENSION's retaliatory actions against WILSON constitute violations of the ADA and ADAAA, which prohibits employers from discriminating against an individual because he or she has opposed any act or practice made unlawful under the ADA/ADAAA, 42 U.S.C. §12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADA/ADAAA on account of her having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. §12203(b).

85. LIFE EXTENSION's termination of WILSON's employment in October 2024 was unlawful retaliation in violation of 42 U.S.C. §12203 because of Plaintiff exercising her rights to request an accommodation for her disability and oppose and complain to Defendant about discrimination based upon WILSON's disability, Autism-Neurodivergent disorder(s), in violation of the ADA and ADAAA, 42 U.S.C. §12203.

86. The fact that WILSON engaged in activity protected by the ADA was a motivating factor in LIFE EXTENSION's termination of Plaintiff's employment in October 2024, in violation of the ADA and ADAAA, 42 U.S.C. §12203.

87. The reasons proffered and/or relied upon by LIFE EXTENSION in October 2024 for terminating WILSON's employment were a pretext for unlawful retaliation against WILSON in violation of the ADA and ADAAA, 42 U.S.C. §12203.

88.     As a direct and proximate result of LIFE EXTENSION's unlawful retaliation against WILSON in violation of the ADA and ADAAA, Plaintiff has suffered damages and has been deprived of job-related economic benefits, all in amounts to be established at trial.

89.     LIFE EXTENSION's retaliation actions in violation of the ADA and ADAAA have caused WILSON to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

90.     LIFE EXTENSION's retaliation actions in violation of the ADA and ADAAA were undertaken intentionally, willfully, and maliciously with respect to, or with malice and/or reckless disregard for, WILSON's federally protected rights under the ADA and ADAAA, as a result of which Plaintiff is entitled to punitive damages from Defendant.

91.     Pursuant to 42 U.S.C. §12205, WILSON is entitled to recover her reasonable attorneys' fees and costs from LIFE EXTENSION as a result of Defendant's violations of the ADA's anti-retaliation provisions.

WHEREFORE, Plaintiff, ASHLEY WILSON, demands judgment against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## COUNT IV
## DENIAL OF ACCOMMODATION FOR A HANDICAP
## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. §760.10

Plaintiff, ASHLEY WILSON, reasserts and reaffirms the allegations set forth in paragraphs 1 through 37 above and further states that this is an action against Defendant, LIFE EXTENSION

FOUNDATION BUYERS CLUB, INC., for failure to provide an accommodation for a handicap in violation of the Florida Civil Rights Act, F.S. §760.10 *et seq.*

92.     Florida Statutes §760.10(1)(a) provides that: "It is unlawful employment practice for an employer:  To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, **handicap**, or marital status." Id. (emphasis added).

93.     At all times material to this action, WILSON  was an "aggrieved person" within the meaning of the FCRA, F.S. §760.02(10).

94.     At all times material to this action, including but not limited to between February 2024 and October 2024, WILSON suffered from a chronic and/or permanent medical conditions as a result of her Autism-Neurodivergent disorder(s) and related neurological conditions, which conditions constitute an actual or perceived "handicap" within the meaning of the FCRA, as WILSON's condition was chronic and involved physical problems including but not necessarily limited to the functioning of WILSON's neurological system and Plaintiff's ability to communicate.

95.     At all times material to this action, including but not limited to between February 2024 and October 2024, WILSON was a qualified individual with a handicap within the meaning of the FCRA because WILSON  possessed the requisite skill and experience to carry out her duties for LIFE EXTENSION as an Accounts Receivable Specialist and WILSON likewise was capable of performing the essential functions of her job despite Plaintiff's handicap(s), Autism-Neurodivergent disorder(s), with or without reasonable accommodation(s) by LIFE EXTENSION.

96.     Further, at all times material to this action, including but not limited to between February 2024 and October 2024, WILSON was also qualified for her job as an Accounts Receivable Specialist with LIFE EXTENSION within the meaning of the FCRA even in the face of the impact of WILSON's handicap(s), Autism-Neurodivergent disorder(s), because LIFE EXTENSION could and should have provided WILSON with reasonable accommodations for Plaintiff's handicap(s).

97.     On May 21, 2024, WILSON requested reasonable accommodations within the meaning of the Florida Civil Rights Act from LIFE EXTENSION for Plaintiff's handicap(s), Autism-Neurodivergent disorder(s).

98.     However, between approximately late May 2024 and early October 2024, LIFE EXTENSION failed to provide WILSON with a reasonable accommodation for Plaintiff's handicap(s), Autism-Neurodivergent disorder(s), in violation of the FCRA, F.S. §760.10(1).

99.     LIFE EXTENSION knowingly and willfully refused to provide WILSON with a reasonable accommodation between approximately late May 2024 and early October 2024 for Plaintiff's handicap(s), Autism-Neurodivergent disorder(s), conduct prohibited by the FCRA.

100.    WILSON has suffered lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of LIFE EXTENSION's accommodation failure-violations of the FCRA.

101.    LIFE EXTENSION's accommodation-failure violations of WILSON's rights under F.S. §760.10 were intentional and were done with malice and reckless disregard for WILSON's rights as guaranteed under the laws of the State of Florida, such that WILSON is entitled to punitive damages from LIFE EXTENSION pursuant to F.S. §760.11(5).

102.    Pursuant to F.S. §760.11(5), WILSON is entitled to recover her reasonable attorneys' fees and costs from LIFE EXTENSION as a result of Defendant's violations of the FCRA.

WHEREFORE, Plaintiff, ASHLEY WILSON demands judgment against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

<u>**COUNT V**</u>
<u>**HANDICAP DISCRIMINATION**</u>
<u>**IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. §760.10**</u>

Plaintiff, ASHLEY WILSON, reasserts and reaffirms the allegations set forth in paragraphs 1 through 37 above and further states that this is an action against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for disparate treatment and handicap discrimination in violation of the Florida Civil Rights Act, F.S. §760.10 *et seq.*

103.    Florida Statutes §760.10(1)(a) provides that: "It is unlawful employment practice for an employer:  To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, **handicap**, or marital status." <u>Id.</u> (emphasis added).

104.    At all times material to this action, WILSON  was an "aggrieved person" within the meaning of the FCRA, F.S. §760.02(10).

105.    At all times material to this action, including but not limited to between February 2024 and October 2024, WILSON suffered from a chronic and/or permanent medical conditions

as a result of her Autism-Neurodivergent disorder(s) and neurological conditions, which conditions constitute an actual or perceived "handicap" within the meaning of the FCRA, as WILSON's condition was chronic and involved physical problems including but not necessarily limited to the functioning of WILSON's neurological system and ability to communicate.

106.   At all times material to this action, including but not limited to between February 2024 and October 2024, WILSON was a qualified individual with a handicap within the meaning of the FCRA because WILSON possessed the requisite skill and experience to carry out her duties for LIFE EXTENSION as an Accounts Receivable Specialist and WILSON likewise was capable of performing the essential functions of her job despite Plaintiff's handicap(s), Autism-Neurodivergent disorder(s), with or without reasonable accommodation(s) by LIFE EXTENSION.

107.   Further, at all times material to this action, including but not limited to between February 2024 and October 2024, WILSON was also qualified for her job with LIFE EXTENSION within the meaning of the FCRA even in the face of the impact of WILSON's handicap(s), Autism-Neurodivergent disorder(s), because LIFE EXTENSION could and should have provided WILSON with reasonable accommodation(s) for Plaintiff's handicap(s).

108.   Between approximately February 2024 and October 2024, WILSON was subjected to harassment, disparate treatment, and discrimination by LIFE EXTENSION because of Plaintiff's handicap(s), Autism-Neurodivergent disorder(s), including but not limited to, *inter alia*: (a) Valeria Vera frequently belittling and making fun of WILSON; (b) Vera questioning Plaintiff's capability to complete tasks WILSON was carrying out successfully for Defendant; (c) Defendant applying policies and/or practices differently to WILSON, such as training, leaving the office, response time to e-mails, having to show management work performed at home, and other business issues for which LIFE EXTENSION subjected WILSON to disparate treatment because of

Plaintiff's handicap(s); and (d) terminating WILSON's employment in October 2024 because of a discriminatory animus against Plaintiff based upon her handicap(s), all in violation of the FCRA, F.S. §760.10(1)(a) & (b).

109.    On October 7, 2024, LIFE EXTENSION terminated Plaintiff's employment because of her actual and/or perceived handicap(s), Autism-Neurodivergent disorder(s), in violation of 42 U.S.C. §12112, which termination was based upon false and/or pretextual grounds because of Plaintiff's actual or perceived handicap(s), in violation of the FCRA, F.S. §760.10(1)(a) & (b).

110.    The reasons proffered and/or relied upon by LIFE EXTENSION in October 2024 for terminating WILSON's employment were false and a pretext for discrimination against WILSON because of her actual or perceived handicap(s), Autism-Neurodivergent disorder(s), in violation of the FCRA, F.S. §760.10(1)(a) & (b).

111.    WILSON's actual and/or perceived handicap(s), Autism-Neurodivergent disorder(s), was a motivating factor in LIFE EXTENSION's decision to terminate WILSON's employment in October 2024, in violation of F.S. §760.10(1)(a) & (b).

112.    WILSON has suffered lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of LIFE EXTENSION's unlawful termination of Plaintiff's employment in October 2024 in violation of the FCRA.

113.    LIFE EXTENSION's disparate treatment and unlawful termination of WILSON because of her handicap(s) in October 2024 in violation of WILSON's rights under F.S. §760.10 were intentional and were done with malice and reckless disregard for WILSON's rights as guaranteed under the laws of the State of Florida, such that WILSON is entitled to punitive damages from LIFE EXTENSION pursuant to F.S. §760.11(5).

114.     Pursuant to F.S. §760.11(5), WILSON is entitled to recover her reasonable attorneys' fees and costs from LIFE EXTENSION as a result of Defendant's violations of the FCRA.

WHEREFORE, Plaintiff, ASHLEY WILSON demands judgment against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

<u>**COUNT VI**</u>
<u>**RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. §760.10**</u>

Plaintiff, ASHLEY WILSON, reasserts and reaffirms the allegations set forth in paragraphs 1 through 37 above and further states that this is an action against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for Retaliation in violation of the Florida Civil Rights Act, F.S. §760.10.

115.     Pursuant to the Florida Civil Rights Act (FCRA), F.S. §760.10(7), it is "an unlawful employment practice for an employer … to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

116.     At all times material to this action, WILSON  was an "aggrieved person" within the meaning of the FCRA, F.S. §760.02(10).

117.     At all times material to this action, including but not limited to between February 2024 and October 2024, WILSON suffered from a chronic and/or permanent medical conditions

as a result of her Autism-Neurodivergent disorder(s) and neurological conditions, which conditions constitute an actual or perceived "handicap" within the meaning of the FCRA, as WILSON's condition was chronic and involved physical problems including but not necessarily limited to the functioning of WILSON's neurological system and ability to communicate.

118.    At all times material to this action, including but not limited to between February 2024 and October 2024, WILSON was a qualified individual with a handicap within the meaning of the FCRA because WILSON possessed the requisite skill and experience to carry out her duties for LIFE EXTENSION as an Accounts Receivable Specialist and WILSON likewise was capable of performing the essential functions of her job despite Plaintiff's handicap(s), Autism-Neurodivergent disorder(s), with or without reasonable accommodation(s) by LIFE EXTENSION.

119.    Further, at all times material to this action, including but not limited to between February 2024 and October 2024, WILSON was also qualified for her job with LIFE EXTENSION within the meaning of the FCRA even in the face of the impact of WILSON's handicap(s), Autism-Neurodivergent disorder(s), because LIFE EXTENSION could and should have provided WILSON with reasonable accommodation(s) for Plaintiff's handicap(s).

120.    WILSON engaged in statutorily protected activity under the Florida Civil Rights Act on multiple occasions between approximately February 2024 and October 2024 by, *inter alia*: (a) Plaintiff requesting reasonable accommodations in May 2025 from LIFE EXTENSION for Plaintiff's handicap(s), Autism-Neurodivergent disorder(s); and (b) WILSON submitting internal discrimination complaints to Defendant in May 2024, June 2024, September 2024, and October 2024 about discrimination because of Plaintiff's handicap(s), Autism-Neurodivergent disorder(s).

121.    On at least four (4) separate occasions during WILSON's employment with LIFE EXTENSION, Plaintiff objected to, opposed, and complained to Defendant about what Plaintiff

reasonably and in good faith believed was discrimination and disparate treatment against WILSON because of her handicap(s), Autism-Neurodivergent disorder(s).

122.    More specifically, when WILSON objected to, opposed, and complained to LIFE EXTENSION on at least four (4) separate occasions—including in May 2024, June 2024, September 2024, and October 2024—about what Plaintiff reasonably and in good faith believed was unlawful discrimination and disparate treatment against her because of her handicap(s), Autism-Neurodivergent disorder(s), WILSON engaged in protected activity within the meaning of the Florida Civil Rights Act, §760.10(7).

123.    In retaliation for WILSON's good faith opposition to and internal handicap discrimination complaints up through early October 2024 to LIFE EXTENSION about disparate treatment and discrimination against Plaintiff because of WILSON's handicap(s), Autism-Neurodivergent disorder(s), LIFE EXTENSION terminated WILSON's employment on October 7, 2024 for one or more reasons that were false and a pretext for unlawful retaliation against Plaintiff in violation of the FCRA, F.S. §760.10(7).

124.    LIFE EXTENSION's termination of WILSON's employment in October 2024 was unlawful retaliation in violation of the Florida Civil Rights Act, F.S. §760.10(7), because of Plaintiff exercising her rights to request an accommodation for her handicap(s) and oppose and complain to Defendant about discrimination based upon WILSON's handicap(s), Autism-Neurodivergent disorder(s), in violation of the FCRA.

125.    The fact that WILSON engaged in activity protected by the FCRA was a motivating factor in LIFE EXTENSION's termination of Plaintiff's employment in October 2024, in violation of the FCRA, F.S. §760.10(7).

126.    The reasons proffered and/or relied upon by LIFE EXTENSION in October 2024 for terminating WILSON's employment were a pretext for unlawful retaliation against WILSON in violation of the FCRA, F.S. §760.10(7).

127.    LIFE EXTENSION's retaliatory violations of WILSON's rights under F.S. §760.10 were intentional and were done with malice and reckless disregard for WILSON's rights as guaranteed under the laws of the State of Florida, such that WILSON is entitled to punitive damages from LIFE EXTENSION pursuant to F.S. §760.11(5).

128.    WILSON has suffered lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of LIFE EXTENSION's unlawful retaliatory termination of Plaintiff's employment in October 2024 in violation of F.S. §760.10(7).

129.    Pursuant to F.S. §760.11(5), WILSON is entitled to recover her reasonable attorneys' fees and costs from LIFE EXTENSION as a result of Defendant's retaliatory violations of the FCRA.

WHEREFORE, Plaintiff, ASHLEY WILSON, demands judgment against Defendant, LIFE EXTENSION FOUNDATION BUYERS CLUB, INC., for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorney's fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## **JURY TRIAL DEMAND**

ASHLEY WILSON demands trial by jury on all issues so triable.

Dated:  July 8, 2025                       Respectfully submitted,


                               By:    **<u>KEITH M. STERN</u>**
                                      Keith M. Stern, Esquire
                                      Florida Bar No. 321000
                                      E-mail:  employlaw@keithstern.com
                                      LAW OFFICE OF KEITH M. STERN, P.A.
                                      80 S.W. 8th Street, Suite 2000
                                      Miami, Florida 33130
                                      Telephone:  (305) 901-1379
                                      Fax:  (561) 288-9031
                                      Attorneys for Plaintiff